Argued and submitted October 21, 2022, affirmed March 29, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL WAYNE CHAMPAGNE,
*Defendant-Appellant.*

Clackamas County Circuit Court
19CR60073; A175059

527 P3d 1067

Defendant was convicted of committing various sexual offenses against two children, both of whom were under 12 years old at the time of the charges. On appeal, defendant argues that (1) the trial court erred in admitting evidence that defendant had previously sexually abused a third child; (2) the court erred in failing to strike, *sua sponte*, testimony of the mother of one of the victims that amounted to impermissible vouching; and (3) the court erred in entering an amended judgment without providing written notice to him. *Held*: The trial court did not err in admitting evidence of previous sexual abuse or commit plain error by failing to strike the testimony of the mother. The trial court erred in amending the judgment pursuant to ORS 137.172(1) without providing written notice to all parties as required by the statute. However, the error was harmless because the amendment involved fixing a clerical error, and defendant had no basis for arguing that the trial court lawfully could have entered any other judgment.

Affirmed.

Katherine E. Weber, Judge.

Morgen E. Daniels, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Hellman, Judge, and Landau, Senior Judge.

LANDAU, S. J.

Affirmed.

**LANDAU, S. J.**

In this criminal case, defendant was convicted of committing various sexual offenses against two children, both of whom were under 12 years old at the time of the charges. On appeal, defendant argues that the court erred in three ways: First, the trial court erred in admitting evidence that defendant had previously sexually abused a third child; second, the court erred in failing to strike, *sua sponte*, testimony of the mother of one of the victims that amounted to impermissible vouching; third, the court erred in entering an amended judgment without providing written notice to him. For the reasons that follow, we affirm.

## I. BACKGROUND

We begin with a brief description of the relevant facts and leave a detailed description of those facts that are pertinent to each assignment of error in our discussion of each assignment.

The state charged defendant with multiple sexual offenses, including first-degree rape and first-degree sodomy, against his granddaughter A and his step-granddaughter O. The children were between the ages of six and nine when the offenses occurred. At trial, the court admitted the testimony of B, who testified that defendant had sexually abused her as well, some years earlier. The court also admitted the testimony of O's mother, who described how O and A had reported that defendant had been abusing them. The prosecutor asked O's mother about her daughter's "character for truthfulness," and O's mother replied that she believed her daughter to be truthful. There was no objection to the question or the answer. A jury ultimately found defendant guilty of all counts, and the trial court orally imposed a sentence of 25 years in prison on each of four of the counts, as required by ORS 137.700. The written judgment, however, erroneously sentenced defendant to 25 *months* in prison on those counts. A month later, the trial court entered an amended judgment that reflected the sentence that had been announced at the sentencing hearing. The court did not provide defendant with prior notice that it planned to amend the judgment.

## II.   ANALYSIS

### A.   *Admission of Evidence of Prior Abuse*

Defendant first assigns error to the admission of B's testimony that, some years earlier, defendant had abused her. Before trial, the state filed a motion to admit that testimony, arguing that the evidence was relevant and admissible as nonpropensity evidence under OEC 404(3) and, in the alternative, as propensity evidence under OEC 404(4).

As to OEC 404(3), the state argued that the evidence was admissible to show defendant's sexual purpose, which the state argued was "different than using the evidence to establish defendant's character and propensity to act accordingly." The state argued that the evidence should not be excluded under OEC 403 because it had significant probative value, in that it showed a consistent and repeated pattern of inappropriate conduct around children and described acts that were "uncannily similar" to some of the acts described by O, and that evidence, although prejudicial, was not unfairly so and did not improperly appeal to the preferences of the trier of fact for reasons unrelated to the power of the evidence to establish a material fact.

As to admissibility under OEC 404(4), the state argued that defendant's sexual interest in children was highly relevant to prove that he acted on that interest and with that purpose on the charged occasion, citing *State v. Williams*, 357 Or 1, 346 P3d 455 (2015). The state again argued that such propensity evidence should not be excluded under OEC 403 for two reasons. First, citing *United States v. LeMay*, 260 F3d 1018, 1029 (9th Cir 2001), the state argued that defendant was expected to suggest that O and A were fabricating, and so the evidence was necessary to bolster the credibility of the victims. Second, in a related vein, the state noted that defendant was expected to call an expert witness, Dr. Bourg, who would opine that the victims' reports had been tainted by O's mother's belief that defendant was someone who might sexually abuse children. According to the state, the evidence of defendant's prior sexual interest was necessary to counter Bourg's testimony.

Defendant responded that the prior-acts evidence was relevant but not for "a noncharacter purpose." Defendant argued that "if the Court allows [B] to testify, *** I just think it's impossible for him to have a fair trial in this matter."

Judge Rastetter, who heard the pretrial motion, agreed with the state, ruling as follows:

"On the other bad acts, I find that it is relevant under [OEC] 404(3) for the nonpropensity purpose of showing Defendant's alleged sexual interest in children and that he acted with a sexual purpose.

"On the [OEC] 404(4) issue, the other act evidence has significant [probative] value, since it shows a pattern of inappropriate conduct toward children. The State needs the evidence. It doesn't [*sic*] need to show that the Defendant acted with a desire or that he was aroused or gratified by sexual acts with—or aroused or gratified by children.

"On balancing, I find that the probative value of the evidence is not outweighed by the danger of unfair prejudice. The allegations in the case are already appalling and simply adding one more instance of that kind of behavior really doesn't add much more outrage to the alleged conduct.

"I also find that the evidence is admissible under [OEC] 404(4), since it is relevant and that it shows sexual interest in children and will tend to show that he acted on that interest.

"The State also needs the evidence in order to cross-examine Dr. Bourg. So the probative value of the evidence is not outweighed by the danger of unfair prejudice as I have already stated."

Judge Weber later presided over defendant's trial, and she and the parties attempted to determine the exact scope of Rastetter's pretrial ruling. Weber explained that she was "simply interpreting his ruling and making a decision based on the evidence the State seeks to introduce."

Weber ultimately concluded that the pretrial ruling "clearly allows [B] to testify" but that the ruling also "clearly requires me to severely limit what may be presented

through [B's] testimony," such that B was allowed to testify as to her "age, basis of relationship, number of times, circumstances, how it was initiated and progressed, and that it was essentially always the same and that's it." B testified at trial in a manner consistent with that ruling.

The trial court later instructed the jury that it "cannot use evidence relating to [defendant's] past conviction or conduct for the purpose of concluding that because [defendant] sexually abused [B] in 2002, he is guilty of sexually abusing [A or O] in this case" but "may take into account evidence that [defendant] has a sexual interest in children to determine whether he was acting on that interest on the occasion of each charge—each charge[d] act involving [A and O]."

On appeal, defendant argues that the trial court erred in admitting evidence of his sexual abuse of B under either OEC 404(3) or OEC 404(4). In light of intervening case law, the state does not attempt to defend the trial court's reasoning under OEC 404(3), and we accept that concession of error. *See State v. Powers*, 323 Or App 553, 563-64, 523 P3d 1112 (2023) (holding that the trial court erred in concluding that evidence of prior sexual abuse of a child was admissible under OEC 404(3) for a nonpropensity purpose). Rather, the state's position is that the trial court's admission of the evidence was permissible under OEC 404(4) as propensity evidence.

Defendant acknowledges that the evidence is relevant under OEC 404(4) as propensity evidence. He argues that the evidence nevertheless is inadmissible because the trial court failed to separately balance the relevance of that evidence as propensity evidence against its potential prejudice under OEC 403. According to defendant, the court (first Rastetter, and then Weber adhering to that ruling) admitted the evidence as both propensity and nonpropensity evidence and failed to conduct *distinct* OEC 403 balancing for purposes of OEC 404(4).

Evidence that is not relevant for a nonpropensity purpose may still be admissible under OEC 404(4) as propensity evidence, provided—among other things—the probative value of that evidence is not substantially outweighed

by the danger of unfair prejudice under OEC 403. *State v. Baughman*, 361 Or 386, 405, 393 P3d 1132 (2017). More specifically, in child sex abuse cases, evidence of prior sexual misconduct may be admissible under OEC 404(4) to prove a defendant's character and propensity, provided that the evidence is not subject to exclusion under the balancing required under OEC 403. *Williams*, 357 Or at 20.

The balancing process under OEC 403 is distinct in the case of propensity evidence, however, because of the significant due process concerns that are associated with its highly prejudicial nature. *State v. Skillicorn*, 367 Or 464, 477-78, 482 n 4, 479 P3d 254 (2021). Thus, for example, in *State v. Cave*, 321 Or App 81, 516 P3d 279 (2022), the defendant was charged with sexually abusing two of his granddaughters. The trial court admitted testimony from the defendant's daughter that the defendant had abused her, as well, concluding that the evidence was being offered for a nonpropensity purpose under OEC 404(3) and was not subject to exclusion under OEC 403. *Id.* at 83. On appeal, the state conceded that the evidence was not admissible under OEC 404(3) but argued that it was still admissible as propensity evidence under OEC 404(4). *Id.* at 86-87. According to the state, it did not matter whether the evidence at issue was labeled "nonpropensity" or "propensity" evidence, because in either case the probative value of the evidence was the same; that is, it was offered to show the defendant's sexual purpose. *Id.* at 87. As a result, the state contended, the trial court's balancing under OEC 403 sufficed, whether the evidence was admitted under either category. *Id.* We rejected the state's contention. The distinction between the two categories of evidence goes beyond mere labeling, we explained. *Id.* at 84. Moreover, the record showed that the trial court had declined to reach the admissibility of the evidence as propensity evidence under OEC 404(4). *Cave*, 321 Or App at 88-89; *see also State v. Travis*, 320 Or App 460, 469-70, 513 P3d 614 (2022) (evidence erroneously admitted under OEC 404(3), remanded for trial court to determine admissibility under OEC 404(4)).

In contrast, in *Powers*, 323 Or App 553, another sexual abuse case, the trial court admitted court-certified copies of the defendant's prior convictions for sexual abuse. The court ruled that the evidence was admissible on two

separate grounds: (1) under OEC 404(3), to prove that the defendant had acted intentionally in engaging in sexual contact with the victim in that case; and (2) under OEC 404(4), to prove the defendant's sexual interest in children. *Id.* at 562. After concluding that the evidence was admissible under OEC 404(3), the court concluded that it was not subject to exclusion under OEC 403. *Id.* at 563. Then, after concluding that the evidence was also admissible under OEC 404(4), the court explained that "[t]he court does not reach a different analysis for admissibility for that purpose under OEC 403 and incorporates its analysis above." *Id.* On appeal, the defendant argued that the trial court had erred in admitting the evidence. *Id.* at 562. The state did not defend the trial court's ruling under OEC 404(3) but maintained that the evidence remained admissible under OEC 404(4). *Id.* at 563-64. In response, the defendant argued that the evidence was not admissible under OEC 404(4), because the trial court had failed to separately balance its probative value against the danger of prejudice under that rule. *Id.* at 564. We rejected the defendant's argument. Where it is clear that the trial court understood the distinct purposes of admitting the evidence, "the fact that the trial court incorporated its previous OEC 403 balancing does not itself demonstrate that the trial court failed to appreciate the propensity nature of the evidence." *Id.* at 565. A trial court "is not required to explicitly recite those differences as part of its balancing," as long as it is clear from the record that the court understood those differences in evaluating the admissibility of the evidence. *Id.*

This case is much more like *Powers* than *Cave*. As in *Powers*, the trial court clearly understood the state's two distinct theories of admissibility—as nonpropensity evidence under OEC 404(3) and as propensity evidence under OEC 404(4). The final two paragraphs of Rastetter's ruling reflect an explicit OEC 404(4) ruling that includes balancing directed specifically at propensity purposes under that rule:

> "I also find that the evidence is admissible under [OEC] 404(4), since it is relevant and that it shows sexual interest in children and will tend to show that he acted on that interest.

> "The State also needs the evidence in order to cross-examine Dr. Bourg. So the probative value of the evidence is not outweighed by the danger of unfair prejudice as I have already stated."

That leaves the question whether the trial court erred in concluding that the probative value of the evidence substantially outweighed the danger of prejudice in admitting it. We review that determination for an abuse of discretion. *State v. Terry*, 309 Or App 459, 461, 482 P3d 105 (2021). In this case, we conclude that the court's balancing fell within the permissible range of the court's discretion, particularly in light of the state's need to cross-examine Bourg, the limitations imposed on B's testimony, and the use of a limiting instruction. *See Powers*, 323 Or App at 567-68 (holding that, in light of the *LeMay* factors, the court acted within its discretion to admit evidence of past abuse to show sexual purpose); *Terry*, 309 Or App at 465 (same); *State v. Moles*, 295 Or App 606, 620, 435 P3d 782, *rev den*, 365 Or 194 (2019), *rev'd on other grounds*, 366 Or 549, 466 P3d 61 (2020) (same). We therefore affirm with regard to the trial court's admission of evidence of defendant's sexual abuse of B.

B.  *Vouching*

In his next assignment, defendant argues that "[t]he trial court erred when it allowed [O's mother] to vouch for [O's] truthfulness." Defendant acknowledges that he did not object to O's mother's testimony at trial but argues that we should exercise our discretion to reverse on plain-error grounds. We are not persuaded that, under the circumstances, the trial court committed plain error by failing to interject and strike O's mother's testimony; and, in any event, it is not an error that we would exercise our discretion to correct in this case.

C.  *Entry of Amended Judgment*

At sentencing, the trial court indicated that it was imposing a sentence of 300 months (25 years) on each of Counts 1, 2, 3, and 4, pursuant to ORS 137.700. However, the trial court's written judgment imposed a sentence of 25 *months* in prison on each count. A month later, the court

amended the judgment to comport with the sentence that it pronounced orally, but there is no indication in the record that defendant was provided written notice before that change was made.

On appeal, defendant argues that the trial court erred when it entered that amended judgment without the written notice required by ORS 137.172(1). That statute provides:

> "The trial court retains authority after entry of judgment of conviction or a supplemental judgment, including during the pendency of an appeal, to modify the judgment, including the sentence, to correct any arithmetic or clerical errors or to delete or modify any erroneous term in the judgment. The court may correct the judgment either on the motion of one of the parties *or on the court's own motion after written notice to all of the parties*."

ORS 137.172(1) (emphasis added). Defendant argues that, because the trial court failed to provide the required written notice, it lacked authority to enter the amended judgment, so we must vacate and remand for further proceedings. In support, defendant relies on *State v. Pryor*, 310 Or App 403, 484 P3d 1123 (2021); *State v. Nobles*, 264 Or App 580, 333 P3d 1077 (2014); and *State v. Whitlock*, 187 Or App 265, 65 P3d 1114, *rev den*, 336 Or 17 (2003), in which we held that written notice to all parties is a prerequisite to exercising authority under ORS 137.172(1) and its statutory predecessor, ORS 137.083 (2007), *repealed by* Or Laws 2017, ch 529, § 26.

The state argues that any failure in not providing notice was harmless because the court was required by statute to impose mandatory 25-year prison sentences for the crimes of first-degree rape, sodomy, and unlawful sexual penetration if the victim is under 12 years of age, as was the case here. In the state's view, notice would not have changed anything because the sentence modification was one that occurred solely by operation of law and involved no discretion on the part of the trial court. In support, the state relies on *State v. Riley*, 195 Or App 377, 384, 97 P3d 1269 (2004), *rev den*, 340 Or 673 (2006), in which we concluded that the trial court's failure to provide the written notice required

by ORS 138.083, the predecessor statute to ORS 137.172(1), amounted to harmless error when the modification to the judgment was required by law.

Both parties fairly claim some support from the precedents that they cite, and neither line of cases engages with the other. And, at least on the surface, there does appear to be some tension in the case law—between cases that, on the one hand, say that a prerequisite for exercising authority under ORS 137.172(1) or its predecessor is providing notice to all parties and, on the other hand, cases holding that a failure to provide such notice may be subject to harmless-error analysis.

Given the parties' competing but distinct lines of cases, we take this opportunity to reconcile them. As we will explain, there is no inconsistency in the cases. The authorities on which defendant relies hold that, for a trial court to exercise authority to amend a judgment *under ORS 137.172(1)*, the court must satisfy the statutory requirement for doing so, in this case, providing notice to the parties. To the extent that a trial court purports to exercise authority under that statute without providing the required notice, the trial court errs. That does not mean that the error always requires reversal. If the trial court possessed authority independently of ORS 137.172(1), failure to comply with the requirements of the statute may be harmless.

In fact, ORS 137.172(1) is not the only source of authority for trial courts to amend a judgment. At common law, if a trial court entered a judgment that was legally erroneous, the court could correct the error. *Gladden v. Kelly*, 213 Or 197, 200, 324 P2d 486 (1958). This was regarded as an exception to the general rule that trial courts lose authority once a defendant begins serving a sentence. *Id*. The rationale was that, if the court entered an unlawful judgment, it never lost its authority in the first place. *State v. Nelson*, 246 Or 321, 324, 424 P2d 223, *cert den*, 389 US 964 (1967). In such circumstances, the fact that notice was not provided to the parties did not affect the court's authority to correct the error. As the Supreme Court explained in *Daugharty v. Gladden*, 217 Or 567, 578, 341 P2d 1069 (1959):

"While it is a general rule that to protect interested parties notice should be given when an application is made to correct a judgment or its record, such notice is not necessary where the error is apparent on the face of the entire court record and the correction thereof could not be successfully opposed. *** Stated simply, the law will not require the doing of a useless act."

The enactment of what is now ORS 137.172(1) did not affect that authority. As originally enacted in 1989, the statute provided:

"The sentencing court retains authority irrespective of any notice of appeal after entry of judgment of conviction to modify its judgment and sentence to correct any arithmetic or clerical errors or to delete or modify any erroneous term in the judgment. The court may correct the judgment either on the motion of one of the parties or on the court's own motion after written notice to all the parties."

*Former* ORS 137.083 (2007). We have concluded that the effect of that statute was to expand, not limit, a trial court's authority to correct clerical errors. As we noted in *State v. Pinkowsky*, 111 Or App 166, 170, 826 P2d 10 (1992), "nothing in the statute provides that it is the exclusive authority for corrections to be made" in a judgment. Instead, ORS 138.083 "permits a trial court to act on specific issues, even though jurisdiction is in an appellate court. *** ORS 138.083 is not a limitation but is an expansion of trial courts' authority to correct clerical errors." *Id.*; *see also State v. Johnson*, 242 Or App 279, 286, 255 P3d 547, *rev den*, 350 Or 530 (2011) ("[T]he legislature is free to create additional exceptions to the common-law rule, and, indeed, it did so with the enactment of ORS 138.083."); *Whitlock*, 187 Or App at 268-69 (discussing the common-law rule and statute).

In 2017, the Oregon legislature overhauled the state's statutes concerning criminal appeals, and in the process, what was originally *former* ORS 138.083 was slightly reworded and codified at what is now ORS 137.172. Nothing in the text or history of the current statute suggests that the legislature intended any substantive changes to the original. *See* Exhibit 37, Senate Committee on Judiciary, SB 896, Apr 6, 2017 (Report of the Direct Criminal Appeals Work Group on SB 896 (2017), Oregon Law Commission)

(Criminal Appeals Report) ("Section 20 recodifies the provisions of ORS 138.083(1)(a) and (b), relating to trial court authority to correct or modify judgments, including during the pendency of an appeal.").[1]

What follows from all this is that there are two independent sources of trial court authority to modify a judgment after a defendant begins serving a sentence—the common law and ORS 137.172(1). Certainly, if a court purports to modify a sentence under the authority conferred by the statute, the court must comply with any requirements in that statute, and a failure to do so will be error. But the error in failing to comply with the statute may be harmless, because the court possessed common-law authority to do the same thing anyway—indeed, was required by law to do so—and there was no cognizable prejudice from the lack of notice.

Our cases are generally consistent with that distinction, even if they have not always said as much. In *Riley*, the trial court modified a judgment to conform to what the law required. 195 Or App at 383. It did so under the earlier version of the statute and did not provide the required notice. The court thus erred. *Id.* at 384. But because the court had inherent authority to make the change anyway— because the law required it—we deemed the error harmless. *Id.*

The cases cited by defendant are not to the contrary. In *Pryor*, the trial court amended a judgment of conviction and imposed an upward departure sentence. 310 Or App at 405. On appeal, the defendant argued that the sentence was in excess of what the law allowed and, in any event, had been imposed without the required notice under ORS 137.172(1). *Id.* at 404-05. The state conceded the error, and we accepted the concession. *Id.* at 405. The issue turned to the appropriate remedy. The state argued that it was possible that the amended judgment reflected a clerical error which could be remedied by an amended judgment following

---

[1] The primary legislative history for the bill that resulted in ORS 137.172(1) is the report of the work group. *See State v. Colgrove*, 370 Or 474, 492, 521 P3d 456 (2022) (explaining the history of SB 896).

the notice required by ORS 137.172(1). *Id.* at 406. We agreed, vacated the sentence, and remanded. *Id.* at 407.

In *Nobles*, the defendant pleaded no contest to a murder charge and was sentenced to 144 months in prison followed by a life term of post-prison supervision (PPS). 264 Or App at 581. The defendant asked the trial court to reduce the PPS term to three years, and the trial court agreed. *Id.* Two days later, the court changed its mind and, invoking ORS 138.083, reinstated the lifetime PPS, but without giving notice to the defendant. *Id.* We concluded that the court lacked authority to modify the judgment under the statute, because notice was "an explicit prerequisite" to exercising authority under that statute. *Id.* at 581-82. There was a hotly contested dispute between the parties as to whether the sentence that the trial court had entered in the amended judgment was required by law, and the possibility of harmless error was not discussed in the opinion; however, it was not the kind of error that could be described as clerical or for which the lack of advance notice could be deemed harmless. *See State v. Nobles*, 306 Or App 1, 5, 473 P3d 1108 (2020) (subsequently addressing the merits of the same substantive legal dispute).

In *Whitlock*, after the defendant began serving his sentence, the trial court was advised that the defendant had previously been convicted of first-degree burglary some years earlier and concluded that the additional conviction brought the defendant within the ambit of a statute, ORS 137.635, that foreclosed any eligibility for reductions of the term of incarceration or early release. 187 Or App at 267. Citing ORS 137.083, the court issued an amended judgment that added a sentence to the effect that the defendant was subject to the limitations of ORS 137.635. *Id.* at 268. The court, however, did not notify the defendant of the modification. *Id.* The defendant, when he learned of the change, challenged the authority of the court to alter the original judgment without notice to him. *Id.* On appeal, the state asserted the trial court's inherent authority to modify an erroneous judgment. *Id.* at 270. The defendant did not contest the existence of that authority but argued that, unless the original sentence was unlawful based on the record before the court at the time the judgment was originally

entered, that authority did not apply. *Id.* at 269-70. We agreed that trial courts possess inherent authority to correct an invalid sentence and commented further that the parties' disagreement presented an "interesting question." *Id.* at 270. But ultimately, we did not address the issue and reversed on other grounds, because the defendant was entitled to an opportunity to be heard on the merits of the modification—including arguing about the state of the record and contesting any evidence offered by the state in support of the modification. *Id.* at 271 ("Further, we are unaware of any reason why, at that time, the state will be precluded from introducing evidence of defendant's prior conviction, nor of any reason why defendant will be precluded from contesting the admissibility or accuracy of that evidence.").[2]

Returning to this case, the trial court did err in amending the judgment pursuant to ORS 137.172(1) without providing all parties the written notice that the statute requires. But that error was harmless given that the court was required by law to impose prison terms of 25 years on each count, consistent with its pronouncement in court. As in *Riley*, defendant has no basis for arguing that the trial court lawfully could have entered any other judgment.

Affirmed.

---

[2] We note that, in a number of instances, we have described the conditions on exercising authority under ORS 137.172(1) as "jurisdictional." *See, e.g.*, *State v. French*, 208 Or App 652, 656, 145 P3d 305 (2006) (referring to the issue "whether the trial court had jurisdiction to amend the sentence under ORS 138.083(1)"). The term should not be understood in the sense of subject matter jurisdiction. *State v. Keys*, 368 Or 171, 180, 489 P3d 83 (2021) (explaining that "courts have not always been precise in their use of the term 'jurisdiction'"); *Dept. of Human Services v. C. M. H.*, 368 Or 96, 108-09, 486 P3d 772 (2021) (describing various ways that courts historically used the term "jurisdiction"). Rather, the references should be understood to concern the trial court's *authority* to correct judgment when jurisdiction lies elsewhere, for example, in this court. *See, e.g.*, *Pinkowsky*, 111 Or App at 169-70 ("The statute [ORS 138.083] permits a trial court to act on specific issues, even though jurisdiction is in an appellate court.").